## UNITED STATES v. LEWIS.

### No. 218, 20525.

Circuit Court of Appeals, Second Circuit.

May 8, 1947.

Louis Kipnis, of New York City, for appellant.

John J. Donovan, Jr., of New York City, for appellee.

---

[1] Thomas v. Hunter, 10 Cir., 153 F.2d 834; Bennett v. Hunter, 10 Cir., 155 F.2d 223.

Before L. HAND, SWAN and CLARK, Circuit Judges.

### L. HAND, Circuit Judge.

Lewis, the appellant, was convicted under an indictment for pledging securities belonging to an insane veteran of the first world war, of whom he was the committee.[1] The only point raised upon the appeal is whether the prosecution was barred by the statute of limitations. The indictment was found on March 1, 1941, and, as the three-year statute applied, that was too late if the crime was committed before March 1, 1938. The facts, which were undisputed, were as follows. Lewis had been appointed committee for the insane veteran in 1928, and on or about December 11, 1937 he pledged some of the veteran's securities with the Central Hanover Bank and Trust Company in New York, to secure a loan of his own. On December 5, 1938, he wrote a letter to the pledgee asking it to transfer the securities to the Corn Exchange Bank and Trust Company in New York, as security for the same loan; and this the pledgee did upon receiving a cheque from the Corn Exchange Bank for the amount due. The Corn Exchange Bank thereafter held the securities as a pledge against the loan until Lewis paid it some time later. The only question argued upon this appeal is whether this transfer was a new offence under the act. Although it appeared upon the trial that on June 6, 1938, Lewis had increased the loan by $100, and on September of that year by another $145, the indictment did not charge either of these as offences, nor has the prosecution urged them in support of the conviction. We shall therefore disregard them, and confine ourselves to the transfer of December 6, 1938.

█ The statute describes the forbidden act as follows: "lend, borrow, pledge, hypothecate, use, or exchange for other funds * * * or embezzle or in any manner misappropriate." Although it speaks with unnecessary redundancy, it appears to have in mind two kinds of offences: first, pledging the property, second, converting it unconditionally. The words "lend, borrow, pledge, hypothecate" are apt for the first offence; "exchange * * * embezzle * * * misappropriate" for the second; "use" is not a word of art in any case, and may cover either. The first of these offences— pledging—consists of encumbering the property so as to make unavailable for the veteran's support so much of it as must answer the loan. In such cases that is the evil against which the act is aimed, and it is not added to, or diminished by changing one pledgee for another. A question might arise if the accused borrowed more from the same pledgee; or if he gave a mortgage on the equity to a second lender, for in that case the veteran's rights would be further invaded; but they are not affected in any way by the substitution of a new pledgee; and the language must be read to conform to its object.

█ The situation is very close to that in United States v. Irvine,[2] where the statute forbad "withholding" pensions from soldiers of the Civil War. The accused began to "withhold" the money at a time too early, if the statute then began to run; but it was argued that "withholding" was a continuous offence so that the limitation did not begin to run until the accused had parted with the money. The court said no: that, although there must be some interval after receipt of the money before the accused could be said to "withhold" it at all, once that time had elapsed, the offence was complete and further retention was not a repetition of it. There was indeed more reason for the opposite conclusion in the word "withholding" than there is here where each of the words used describes an affirmative act of dominion. It is true that conspiracy is a continuing offence so long as any concerted action continues;[3] but even in conspiracy the concert may end and only the "result" remain, and in that event the limitation runs from the end of the concert which may be the last overt act.[4] Quite

---

[1] Section 556a, Title 38, U.S.C.A.

[2] 98 U.S. 450, 25 L.Ed. 193.

[3] United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168.

[4] Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224; Warren v. United States, 5 Cir., 199 F. 753, 43 L.R.A.,N.S., 278; Pioneer Packing Co. v. United States, 9 Cir., 99 F.2d 547.

aside, therefore, from whether the pledge was an act of absolute dominion which made irrelevant any further acts of the accused, we hold that the indictment was barred.

Conviction reversed; indictment dismissed.